# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03-MDL-1570 (GBD)(SN)<br><br>ECF Case |

**This document relates to:**

*Mandelkow et al. v. Islamic Republic of Iran*, No. 20-cv-00315
*Alcabes et al. v. Islamic Republic of Iran*, No, 20-cv-00340
*Anderson et al. v. Islamic Republic of Iran*, No, 20-cv-00354
*Ahearn et al. v. Islamic Republic of Iran*, No, 20-cv-00355
*Asciutto et al. v. Islamic Republic of Iran*, No, 20-cv-00411
*Amin et al. v. Islamic Republic of Iran*, No, 20-cv-00412
*Basci et al. v. Islamic Republic of Iran*, No, 20-cv-00415

## PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S MARCH 3, 2023 REPORT & RECOMMENDATION (ECF 8901) AND JULY 18, 2023 REPORT & RECOMMENDATION (ECF 9216)

Barry Salzman
Michael Barasch
Barasch & McGarry, P.C.
11 Park Place
18th Floor
New York, NY 10007
Phone: 212.385.8000
Fax: 212.385.7845

Aryeh S. Portnoy
Glen G. McGorty
Crowell & Moring LLP
590 Madison Avenue
20th Floor
New York, NY 10022
Phone: 212.223.4000
Fax: 212.223.4134

August 1, 2023                COUNSEL FOR PLAINTIFFS

## TABLE OF CONTENTS

I.    Introduction ........................................................................................................................ 1

II.    Defendant's Intentional Actions Caused the Injuries to the Surviving Family Member
Plaintiffs. ................................................................................................................................... 3

   A.    The Magistrate Judge Correctly Held that Defendant's Actions Foreseeably and
   Directly Caused Injuries to the Decedents. ................................................................................. 3

   B.    Defendant's Intentional Actions Caused the Same Injuries to the Surviving Family
   Member Plaintiffs as to Other Family Member Plaintiffs to Whom This Court Routinely Has
   Awarded Damages Under the FSIA Terrorism Exception. ......................................................... 6

   C.    The FSIA's Terrorism Exception and General Principles of Tort Law Allow the Family
   Member Plaintiffs to Bring Claims. .......................................................................................... 7

   D.    Policy Considerations Justify Granting the Claims of Family Member Plaintiffs and
   Potential Family Member Plaintiffs are not an Unlimited Class. ............................................. 11

III.    Every Other Court Which Has Considered Family Member Claims Under the FSIA Has
Held that Family Members Can Bring Claims For Emotional Injuries Resulting From the Injuries
to Their Loved Ones. ................................................................................................................ 15

IV.    Conclusion ...................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Islamic Republic of Iran*,
574 F. Supp. 15 (D.D.C. 2008) ........................................................................................10

*Amduso v. Republic of Sudan*,
61 F. Supp. 3d 42 (D.D.C. 2014) ......................................................................................16

*Barry v. Islamic Republic of Iran*,
437 F. Supp. 3d 15 (D.D.C. 2020) ....................................................................................15

*Bettis v. Islamic Republic of Iran*,
315 F.3d 325 (D. C. Cir. 2003) .........................................................................................13

*Davis v. Republic of Iran*,
882 F. Supp. 2d 7 (D.D.C. 2012) ................................................................................10, 15

*Heiser v. Islamic Republic of Iran*,
466 F. Supp. 2d 229 (D.D.C. 2006) ..................................................................................10

*Kinsman Transit Co. v. City of Buffalo*,
388 F.2d 821 (2d Cir. 1968) ...............................................................................................9

*Kirschenbaum v. Islamic Republic of Iran*,
572 F. Supp. 2d 200 (D.D.C. 2008) ..................................................................................10

*Laborers Loc. 17 Health & Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999), *as amended* (Aug. 18, 1999) ........................................... *passim*

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d. Cir. 2003) ...............................................................................................8

*MF Global Holdings Ltd. v. PricewaterhouseCoopers LLP*,
43 F. Supp. 3d 309 (S.D.N.Y. 2014) ............................................................................. 8-9

*Mustard v. Islamic Republic of Iran*,
Case No. 21-cv-00163, 2023 WL 1778193 (D.D.C. Feb. 6, 2023) .................................13

*Owens v. Republic of Sudan*,
864 F.3d 751 (D.C. Cir. 2017) ..............................................................................3, 10, 13

*Peterson v. Islamic Republic of Iran*,
515 F. Supp. 2d 25 (D.D.C. 2007) ....................................................................................10

*Salazar v. Islamic Republic of Iran*,
    466 F. Supp. 2d 229 (D.D.C. 2006) ......................................................................10

*Schertzman Cohen v. Islamic Republic of Iran*,
    Case No. 17-cv-1214, 2019 WL 3037868 (D.D.C. July 11, 2019) ........................................15

*Taitt v. Islamic Republic of Iran*,
    Case No. 20-cv-1557, 2023 WL 2536518 (D.D.C. Mar. 16, 2023) ......................................16

*Valore v. Islamic Republic of Iran*,
    700 F. Supp. 2d 52 (D.D.C. 2010) .................................................................8, 16

**Statutes**

Foreign Sovereign Immunities Act, 28 U.S.C. 1605A ...................................................... *passim*

**Other Authorities**

Restatement (Second) of Torts...............................................................................10, 13

Restatement (Third) of Torts: Liab. For Physical & Emotional Harm ................................5, 9, 13

I.      **Introduction**

On March 3, 2023, Magistrate Judge Sarah Netburn issued an initial Report and

Recommendation ("Initial R. & R."), ECF No. 8901,[1] on the motions for partial final default

judgment against Defendant the Islamic Republic of Iran filed by the 646 plaintiffs ("Plaintiffs")

in the seven above-referenced cases in this multi-district litigation, ECF Nos. 8346, 8350, 8358,

8361, 8369, 8373.  This Court has repeatedly held Iran liable under the Foreign Sovereign

Immunities Act, 28 U.S.C. § 1602 *et seq.*, for the 9/11 Attacks, and has awarded damages to

thousands of plaintiffs, including victims who were physically injured in the 9/11 Attacks,

victims who were killed in the 9/11 Attacks, and family members of victims who were killed, but

the Initial R. & R. discussed, for the first time, questions of liability and damages for "two new

categories of victims: (1) people who developed chronic and ultimately fatal medical conditions

after 9/11-related environmental exposures," referred to as the "Latent Injury Decedents;" and

"(2) their immediate family members," referred to as the "Surviving Family Members."  Initial

R. & R. at 1, ECF No. 8901.  The Initial R. & R. recommended granting in part the Plaintiffs'

motions for default judgment and awarding damages to the estates of the Latent Injury Decedents

but denying the motions for default judgment as to the Surviving Family Members.  The Initial

R. & R. also recommended awarding damages to certain estates of Latent Injury Decedents

contingent on the submission of additional evidence.  *Id.* at 26.  Plaintiffs submitted additional

evidence on May 1, 2023.  Letter from Barry Salzman, May 1, 2023, ECF. No. 9066.

On July 18, 2023, Magistrate Judge Netburn issued a Report & Recommendation ("Final

R. & R.") with revised recommendations, which affirmed the determination that Iran was liable

to victims who died from latent injuries related to the 9/11 Attacks but not to their family

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

members.  Final R. & R. at 2, ECF No. 9216 (citing Initial R. & R. at 2-16, ECF No. 8901).

Accordingly, Magistrate Judge Netburn recommended granting in part the motions for default

judgment and awarding damages to the estates of the Latent Injury Decedents, but denying the

motions for default judgment as to the Surviving Family Members.  Final R. & R. at 3, ECF No.

9216.[2]

      As set forth in further detail below, Plaintiffs object to the Final R. & R. only insofar as it

recommended denial of default judgment in favor of the Surviving Family Members.  Magistrate

Judge Netburn correctly determined that Defendant's intentional actions foreseeably and directly

caused fatal injuries to the Latent Injury Decedents that were not legally distinct from the deaths

of other plaintiffs; accordingly, the Family Member Plaintiffs also have injuries caused by the

very same intentional actions that are not legally distinct from the family member injuries for

which this Court has already awarded damages.  The Final R. & R.'s recommendation to deny

the claims of Family Member Plaintiffs is therefore inconsistent with the previous decisions of

this Court.  Moreover, that recommendation also is inconsistent with the decisions of every other

court of which Plaintiffs are aware that has considered family member claims under the FSIA's

Terrorism Exception and with the intention of Congress in passing that statute to ensure justice

for all victims.  Denying the claims of the Family Member Plaintiffs would be treating their

claims for pain and suffering less favorably than the equally meritorious claims of every other

9/11 family member victim of the same grievous acts, and less favorably than the claims of every

other family member victim of other attacks.  Accordingly, this Court should decline to adopt

---

[2] The Final R. & R. also recommended not entering judgment on certain claims where the estate representative passed away since the filing of the complaint, with leave to re-file once new representatives are substituted.  Final R. & R. at 3, ECF No. 9216.  Plaintiffs do not object to that recommendation, and are in the process of preparing such substitution.

that recommendation, and should instead grant the claims of the Family Member Victims and

enter judgment on their behalf.

## II.      **Defendant's Intentional Actions Caused the Injuries to the Surviving Family Member Plaintiffs.**

### A.      **The Magistrate Judge Correctly Held that Defendant's Actions Foreseeably and Directly Caused Injuries to the Decedents.**

Magistrate Judge Netburn correctly held that the Latent Injury Decedents' have shown

that Iran proximately caused their injuries consistent with "well-established principles" of tort

law.  Initial R. & R. at 9, ECF 8901.  Applying the "two-pronged test for proximate cause

endorsed in *Owens v. Republic of Sudan*," Magistrate Judge Netburn held that "(1) the

[D]efendant's actions were a substantial factor in the sequence of events that led to" the Latent

Injury Decedents' injuries and subsequent deaths, "and (2) their injuries were reasonably

foreseeable or anticipated as a natural consequence of the [D]efendant's conduct."  *Id.* (citing

*Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017), *certified question answered*,

194 A.3d 38 (D.C. 2018), and *vacated and remanded on other grounds sub nom. Opati v.

Republic of Sudan*, 140 S. Ct. 1601 (2020) (internal quotation marks omitted)).  With regard to

the first prong, as the Court had already found that Iran's conduct "was a substantial factor

leading to the 9/11 Attacks," the only question to be resolved was whether the latent injuries

were sufficiently connected to the 9/11 Attacks.  Initial R. & R. at 9-10, ECF 8901.  The Latent

Injury Decedents, like other victims for whom this Court has entered judgment, suffered various

physical and emotional injuries and conditions on the day of and/or in the aftermath of the

Attacks.  As the Plaintiffs described in the filings in support of their motions for default

judgment, the Latent Injury Decedents

> lived or worked near Ground Zero; witnessed the immediate horror
> of the attack; felt the dust and debris falling around them; witnessed
> the horror of people jumping to their death[s] from the burning,

3

> collapsing buildings; saw the site every day in the aftermath; and/or
> participated in the rescue and clean-up operations immediately
> following the attack, where they searched the rubble to rescue
> survivors and then to recover bodies.  . . . [E]ach victim suffered
> emotional injuries, and some physical injuries, on September 11,
> and all suffered debilitating physical injuries from their exposure
> leading to years of disease and pain, followed by death.

*See* Mandelkow Pls.' Mem. in Supp. of Renewed Mot. For Partial Final Default J. at 14-15, Aug.

16, 2022, ECF 8359.  On the day of and in the period after the attack, the Latent Injury

Decedents suffered from injuries including burns, respiratory conditions, loss of corneas, chronic

back and neck pain, heart problems, headaches, PTSD, nightmares, insomnia, depression,

survivor's guilt, stress, addiction, and extreme fear and anxiety.  *See, e.g.*, Initial R. & R. at 18-

19, ECF No. 8901 (describing injuries to Mark Harris, a Latent Injury Decedent in *Basci*, and

Ronald Coyne, a Latent Injury Decedent in *Ahearn*); Salzman Decl. in Supp. of Renewed Mot.

For Partial Final Default J. as to Ahearn Pls., Aug. 16, 2022, Ex. J at 36, ECF No. 8348-10

(Affidavit of Craig S. Phillips); Salzman Decl. in Supp. of Renewed Mot. For Partial Final

Default J. as to Alcabes Pls., Aug. 16, 2022, Ex. E at 27, ECF No. 8352-5 (Affidavit of Charlene

Marie Kyles), Ex. F at 14, ECF No. 8352-6 (Affidavit of Shawna J. Jones), Ex. K at 9, ECF No.

8352-11 (Affidavit of Frederick M. McQuillan); Salzman Decl. in Supp. of Renewed Mot. For

Partial Final Default J. as to Anderson Pls., Aug. 16, 2022, Ex. E at 22, ECF 8356-5 (Affidavit of

Kosiko Imuhri Davis), Ex. M at 4, ECF No. 8356-13 (Affidavit of Nicholas Vaughan), Salzman

Decl. in Supp. of Renewed Mot. For Partial Final Default J. as to Mandelkow Pls., Aug. 16,

2022, Ex. G at 33, ECF No. 8360-7 (Affidavit Edward J. Carroll), Ex. H at 3, ECF No. 8360-8

(Affidavit of Angelina Casaletto); Salzman Decl. in Supp. of Renewed Mot. For Partial Final

Default J. as to Basci Pls., Aug. 16, 2022, Ex. E at 35, ECF No. 8367-5 (Affidavit of Shirley Jean

Carlock), Ex. F at 32, ECF No. 8367-6 (Affidavit of Kelsey Alexandra Harcourt), Ex. M at 40,

ECF No. 8367-13 (Affidavit of Teri Roldan); Salzman Decl. in Supp. of Renewed Mot. For

Partial Final Default J. as to Asciutto Pls., Aug. 16, 2022, Ex. J at 39-40, ECF No. 8371-10 (Affidavit of Joseph M. Krasko), Ex. P at 8-9, ECF No. 8371-16 (Affidavit of Patricia Murphy-Hess); Salzman Decl. in Supp. of Renewed Mot. For Partial Final Default J. as to Amin Pls., Aug. 16, 2022, Ex. F at 18, ECF 8375-6 (Affidavit of Patricia Dillon), Ex. J at 4, ECF 8375-10 (Affidavit of Gertie Reingold), Ex. L at 20, ECF 8375-12 (Affidavit of Faith Ann Smith).  Each of the Latent Injury Decedents further suffered from a condition caused by exposure to toxins or other hazards resulting from the 9/11 Attacks, and those conditions ultimately proved fatal.  In evaluating the connection between these fatal injuries and the 9/11 Attacks, Magistrate Judge Netburn relied on determinations of the Victim Compensation Fund ("VCF") and the World Trade Center Health Program ("WTC Health Program") that the 9/11 Attacks "triggered the Latent Injury Decedents' illnesses" and on declarations from family members establishing that the decedents died of these illnesses.  Initial R. & R. at 10-11, ECF No. 8901.  The VCF and WTC Health Program "leverage the expertise of medical experts and rigorous research," and are therefore "best positioned to evaluate the[] medical facts."  *Id.* at 10.  Accordingly, based on the prior VCF and WTC Health Program determinations and the declarations, Magistrate Judge Netburn concluded "that 9/11 was a substantial factor leading to the Latent Injury Decedents' medical conditions," and "that each Latent Injury Decedent died from 9/11-related conditions." *Id.* at 10-11.

With respect to the second prong, Magistrate Judge Netburn held, correctly, that pursuant to "[b]asic principles of tort law" and in particular "the Restatement's support of broad liability for intentional torts," *id.* at 12-13 (citing Restatement (Third) of Torts: Liab. For Physical & Emotional Harm §§ 29 cmt. o, 33 (2010)), the injuries and deaths of the Latent Injury Decedents were a "'reasonably foreseeable" consequence of Iran's material support to al Qaeda, because the

"explosions caused by commercial aircrafts slamming into buildings inevitably created an unsafe environment." Initial R. & R. at 12. Magistrate Judge Netburn therefore correctly concluded that "Plaintiffs' deaths after prolonged 9/11-linked illnesses" were not "different in legally salient ways" from other injuries and deaths resulting from 9/11 for which the Court had already awarded damages. *Id.*

Accordingly, Magistrate Judge Netburn concluded that the Latent Injury Decedents' claims satisfied the test for proximate causation and recommended granting the motions for default judgment as to those Plaintiffs.

> **B.    Defendant's Intentional Actions Caused the Same Injuries to the Surviving Family Member Plaintiffs as to Other Family Member Plaintiffs to Whom This Court Routinely Has Awarded Damages Under the FSIA Terrorism Exception.**

Magistrate Judge Netburn's conclusion that the injuries and deaths of the Latent Injury Decedents "were not different in legally salient ways" from other deaths caused by the 9/11 Attacks should apply with equal force to the claims of the family members of those decedents. This Court has previously adjudicated claims brought by family members of victims killed on 9/11, and consistently has awarded damages to family members based on those claims. If the claims of the Latent Injury Decedents are not legally distinct from the claims of other deceased plaintiffs who have been awarded damages, the claims of the Family Member Plaintiffs based on the injuries to and deaths of their loved ones are not legally distinct from the claims of other family member plaintiffs who have been awarded damages based on the deaths of their loved ones. Just as the intentional tortious actions of Iran caused the injuries and ultimate deaths of the Latent Injury Decedents, those same acts caused the injuries to the Latent Injury Decedents' immediate family members. The injuries to the Family Member Plaintiffs are no less foreseeable, and no more attenuated, than the injuries to the Latent Injury Decedents. The

Family Member Plaintiffs suffered concurrently with the decedents—their injuries began immediately following the 9/11 Attacks, when the victims who were present at the scene on the day of and/or in the aftermath of the 9/11 Attacks began to suffer physically and emotionally, and continued throughout the years of emotional distress and physical illness suffered by the Latent Injury Decedents.  The Family Member Plaintiffs not only suffered similarly to other family members who lost loved ones, but in many cases suffered for extended periods as they watched their loved ones suffer from excruciating pain and deteriorating health before dying. This Court has awarded damages to numerous family members on the basis of the injuries they suffered as a result of the death of their loved ones, and should do no less—and there is no legal basis for doing less—for the family members of the Latent Injury Decedents.

> **C.**     **The FSIA's Terrorism Exception and General Principles of Tort Law Allow the Family Member Plaintiffs to Bring Claims.**

In declining to recommend awards to the Family Member Plaintiffs, Magistrate Judge Netburn relied on cases describing general principles of tort law relating to instances of indirect injury.  Notwithstanding such cases, however, the FSIA's Terrorism Exception explicitly provides that the Family Member Plaintiffs have claims for their indirect injuries, and, in the context of terrorism, this Court and others have consistently held that immediate family members may recover for injuries to their loved ones, because terrorism is designed and intended to cause widespread harm beyond the injuries to the direct victims.  Moreover, it is essential that the principles applicable to victims of terrorist attacks be applied consistently to all family members of terrorism victims, and not applied differently to different groups of family members.

Magistrate Judge Netburn's recommendation relied on *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, which describes cases where injuries to a plaintiff "that are wholly derivative of harm to a third party . . . are generally deemed indirect and as a

consequence too remote, as a matter of law, to support recovery."  191 F.3d 229, 236 (2d Cir.

1999), *as amended* (Aug. 18, 1999).  But the conclusion that derivative injuries are too remote to

support recovery is not applicable in determining the scope of liability under the FSIA's

Terrorism Exception and is inconsistent with the prior holdings of this Court.  The FSIA's

Terrorism Exception, under which all Plaintiffs here bring their claims, specifically provides that

claims may be brought for "personal injury" and that damages for such claims may include

"solatium," 28 U.S.C. 1605A(c), and, as Magistrate Judge Netburn notes, courts have routinely

held that solatium claims are "'indistinguishable from' intentional infliction of emotional distress

('IIED') claims," Initial R. & R. at 13, ECF No. 8901 (quoting *Valore v. Islamic Republic of

Iran*, 700 F. Supp. 2d 52, 85 (D.D.C. 2010)).  Solatium damages are compensation for injuries

which are inherently "derivative of harm to a third party."  The plain language of the FSIA's

Terrorism Exception therefore explicitly allows for "derivative" claims brought by family

member victims, and there is no legal basis to deprive the Family Member Plaintiffs who

suffered as a result of the 9/11 Attacks of that same right extended to all other family members of

terrorist attack victims.  To do so would be inconsistent with prior holdings of this Court, which

has held Iran liable for injuries to family member victims and made thousands of damages

awards to such victims.

    Although Magistrate Judge Netburn concluded that the "'recitation of the chain of

causation'" for the Family Member Plaintiffs' injuries shows that chain "'is far too long to

constitute proximate cause,'" Final R. & R. at 15-16, ECF 8901 (first quoting *Lerner v. Fleet

Bank, N.A.*, 318 F.3d 113, 123 (2d. Cir. 2003) *abrogated on other grounds by Lexmark Int'l, Inc.

v. Static Control Components, Inc.*, 572 U.S. 118 (2014), *as recognized by Am. Psychiatric Ass'n

v. Anthem Health Plans, Inc.*, 821 F.3d 352 (2d Cir. 2016) and then quoting *MF Global Holdings

*Ltd. v. PricewaterhouseCoopers LLP*, 43 F. Supp. 3d 309, 314 (S.D.N.Y. 2014)), that conclusion cannot be reconciled with the conclusion that the injuries to the decedents are not legally distinct from the injuries to other deceased plaintiffs.  The only additional link in the chain separating Family Member Plaintiffs from the Latent Injury Decedents is that the family members suffered as a result of the injuries to the Latent Injury Decedents, but the same is true for all family member victims—they each suffered as a result of the injury to their loved ones.  If the Latent Injury Decedents are not legally distinct from other deceased victims, the chain of causation for the Family Member Plaintiffs is not legally distinct from the chain of causation for the thousands of other family member victims to whom this Court has awarded damages.

As the Second Circuit recognized in *Laborers Local 17 Health & Benefit Fund*, "[p]roximate cause is an elusive concept, one always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent."  191 F.3d at 235 (internal quotation marks omitted).  Magistrate Judge Netburn correctly noted that broad liability is appropriate for intentional torts, as an actor causing intentional harm should be "'subject to liability for that harm even if it was unlikely to occur'" because of "'the moral culpability of the actor' and the 'seriousness of harm intended.'"  Initial R. & R. at 12, ECF 8901 (quoting Restatement (Third) of Torts: Liab. For Physical & Emotional Harm § 33 (2010)).  The same principle of broad liability should apply to Iran's liability to immediate family members of victims injured by the 9/11 Attacks.  Thus, the limitation on tort liability found in cases where courts are deciding liability for non-intentional torts—such as *Kinsman Transit Co. v. City of Buffalo*, where the court held that there was no liability for damages to businesses which lost money as a result of a disruption in river shipping where, due to negligence, a ship to accidentally broke loose from its mooring, the loose ship struck another ship, the second ship

struck a bridge, the bridge collapsed, and the wreckage of bridge and ships formed a dam which caused flooding and an ice jam and disrupted transportation on the river for a period of two months, 388 F.2d 821, 822 (2d Cir. 1968)—is not applicable for torts involving intentional terrorist activity.

Further, terrorism is not only an intentional act, but one which is intended to cause harm to others beyond the immediate physical injuries to victims present at the site, and a defendant providing material support for terrorism is liable for that intended harm.  As courts have long held, and as Magistrate Judge Netburn noted, "'terrorist attack[s]—by [their] nature—[are] directed not only at the victims but also at the victims' families.'"  Final R. & R. at 14, ECF No. 8901 (quoting *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15, 29 (D.D.C. 2008)); *see also Kirschenbaum v. Islamic Republic of Iran*, 572 F. Supp. 2d 200, 212 (D.D.C. 2008) (quoting *Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 328 (D.D.C. 2006); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115 n.12 (D.D.C. 2005)).  It is for this reason that courts have determined that family member plaintiffs may bring IIED claims even if they were not present at the terrorist attack which injured or killed their loved ones.  *See* Initial R. & R. at 13. Courts have been guided by section 46 of the Restatement (Second) of Torts, *see id.* (citing *Davis v. Islamic Republic of Iran*, 882 F. Supp. 2d 7, 14 (D.D.C. 2012), which explicitly "leave[s] open the possibility of situations in which presence at the time may not be required," Restatement (Second) of Torts § 46 cmt. l (1965); *see also Owens*, 864 F.3d at 810.

The Family Member Plaintiffs here are exactly the type of victim Iran intended to harm, and of course did harm, by supporting acts of terrorism.  The harm to Family Member Plaintiffs was not an afterthought or unintended consequence, but a result of a terrorist attack intended to intimidate and terrorize victims beyond those in the immediate line of the terrorists' fire.  Thus,

unlike the plaintiffs in *Laborers Loc. 17 Health & Benefit Fund* who could not establish that their injuries from defendants' deception regarding the health effects of tobacco were anything other than derivative of the injuries to tobacco smokers, *see* 191 F.3d 229 (2d Cir. 1999), the Family Member Plaintiffs were among the intended victims of the 9/11 Attacks, and their injuries are distinct from and additional to the injuries to their loved ones.  The Family Member Plaintiffs here are no different from the thousands of family member victims to whom this Court and others consistently have awarded damages under the Terrorism Exception as a result of terrorist acts that harmed their loved ones.  None of the cases on which Magistrate Judge Netburn's recommendation relied relate to international terrorism or the FSIA Terrorism Exception, and Plaintiffs are not aware of any case that has denied a family member claim as unforeseeable or too attenuated when the direct victim's injury was deemed to have been caused by a defendant's terrorist act.

The injuries to the Family Member Plaintiffs are no less direct, no less foreseeable, and no more attenuated than the injuries to the Latent Injury Decedents or the injuries to other family members whose claims this Court and others have already granted.  Under the plain language of the FSIA's Terrorism Exception, Iran is liable for the injuries to family members caused by its support for terrorist activity, and an award of damages to the Family Member Plaintiffs would be consistent with that language and with the general principles of tort law as described in Magistrate Judge Netburn's R. & R. and prior awards of this Court.

> ### D.   Policy Considerations Justify Granting the Claims of Family Member Plaintiffs and Potential Family Member Plaintiffs are not an Unlimited Class.

As the Second Circuit acknowledged in *Laborers Local 17 Health & Benefit Fund*, "the direct injury test 'is not the sole requirement of [proximate] causation.'"  191 F.3d at 235 (quoting *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 269 (1992)).  The Second Circuit

outlined three policy considerations, all of which counsel in favor of awarding judgments to the

Family Member Plaintiffs.  First, there is no possibility that the Family Member Plaintiffs'

claims are attributable to "other, independent, factors."  191 F.3d at 239.  Unlike in *Laborers*

*Local 17 Health & Benefit Fund*, where it was impossible for plaintiffs to prove with any

certainty what factors led to smokers continuing to smoke instead of stopping, *id.* at 239-240, the

claims of the Family Member Plaintiffs here are based entirely on the suffering they endured

because of the injury to their loved ones as a result of 9/11.  Here, the "chain of causation leading

to damages is not complicated by the intervening agency of third parties."  *Id.* at 240.  Second,

there is no concern of multiple recovery or the need to apportion damages among different

plaintiffs to avoid multiple recovery; although the Family Member Plaintiffs are recovering for

injuries they suffered *based on* the injury to their loved ones, their injuries are distinct from those

of their loved ones.  Unlike in *Laborers Local 17 Health & Benefit Fund*, where insurance

companies recovering for injuries to their insureds could lead to double recovery if the insured

victims also recovered, *id.*, the types of injuries suffered by the Latent Injury Decedents and the

Family Member Plaintiffs are different from each other, and allowing both sets of plaintiffs to

recover is not a double recovery.  Third, the directly injured victims cannot fully vindicate the

rights of everyone affected—again, because terrorist acts are designed and intended to cause

widespread harm, liability for such acts is not limited to just direct victims.  Congress, in

enacting the FSIA's Terrorism Exception, recognized that both direct victims and family

members were entitled to recover.  As this Court and others consistently have held, allowing

such recovery is consistent with the intent of Congress to deter terrorist activity.

In addressing these three policy considerations, the Second Circuit acknowledged the

concern for "a potential explosion in the scope of tort liability," *id.* at 240, the same concern

expressed by Magistrate Judge Netburn that granting the Family Member Plaintiffs' claims

would lead to an unlimited class of plaintiffs.  Here, however, as already discussed, the intent of

Congress to allow recovery by family members in the context of terrorist attacks is clear—and

the Second Circuit acknowledge in *Laborers Local 17 Health & Benefit Fund* that such questions

were "best left to the legislature." *Id.*  Moreover, any concern about a potentially unlimited class

of victims with claims arising from the 9/11 Attacks is based on an incorrect premise.  Only

direct victims, who this Court deems were injured or killed as a result of their presence at the site

of the 9/11 Attacks either during or after the Attacks, and the immediate family members of

*those victims* will have valid claims against the Defendant.  *See, e.g.*, *Owens v. Republic of*

*Sudan*, 864 F.3d 751, 807 (D.C. Cir. 2017) ("The common-law tort of IIED limits recovery to the

immediate family of a victim who is physically injured or killed . . .[t]herefore, not every person

who experiences emotional distress from a major terrorist attack . . . can state a claim for IIED

absent some close relationship to a victim who was injured or killed."); *Bettis v. Islamic Republic*

*of Iran*. 315 F.3d 325, 335-338 (D. C. Cir. 2003) (holding that recovery under the FSIA's

Terrorism Exception is limited to immediate family members consistent with the limitation in

section 46(2) of the Restatement (citing Restatement (Second) of Torts § 46(2) (1965)); *see also*

Restatement (Third) of Torts: Phys. & Emot. Harm § 46 (2012) (limiting "recovery for emotional

harm" to "close family members").  Thus, the class of family members with valid claims will be

limited based on the direct victims to whom the Court finds Defendant is liable.  Even if

Defendant intended for the terrorist attacks to have a more widespread effect on all residents of

New York or even the United States, Defendant's liability will still be limited to such direct

victims and their immediate family members.

Moreover, to the extent that Magistrate Judge Netburn is concerned with spouses who married after the 9/11 Attacks or children who were born after the 9/11 Attacks, the Family Member Plaintiffs here do not include any children who were born after the 9/11 Attacks, and the Court can determine the validity of claims by spouses who married after the 9/11 Attacks, including determining whether they had "a relationship with the victim at the time of the attack," *see* Initial R. & R. at 14, on an individualized basis using the affidavit evidence submitted by Plaintiffs, as it has done with step-children, long-term partners, and other such "equivalents" to immediate family members.[3]

Despite these clear limits, there likely will be a large number of plaintiffs, as there already have been a large number of plaintiffs with claims arising from the 9/11 Attacks and as there are large numbers of plaintiffs with claims arising from other attacks. Yet concern for the number of plaintiffs who may have claims due to the horrific scope and nature of the 9/11 Attacks should not affect the Court's application of the relevant legal principles—and, as described below, the Court should not treat these family member victims of 9/11 any less favorably than all others, or than the victims of other terrorist attacks. To insulate Iran from liability to the Family Member Plaintiffs on the basis that their numbers are too great would create perverse incentives—the greater the number of lives ruined by an attack, and the more widespread the harm, the harder it will be for the victims to hold the perpetrators responsible for their horrific actions. This Court should not adopt such a rule.

---

[3] To the extent additional evidence is required for such individualized determinations, Plaintiffs respectfully request the opportunity to provide such additional evidence.

### III.   **Every Other Court Which Has Considered Family Member Claims Under the FSIA Has Held that Family Members Can Bring Claims For Emotional Injuries Resulting From the Injuries to Their Loved Ones.**

Courts deciding FSIA claims consistently award damages to family members based on their injuries resulting from the injuries to their loved ones.  Plaintiffs are not aware of any court which has held that individuals injured due to their presence at or after a terrorist attack are entitled to recover but that their family members categorically may not bring claims.

In determining whether family member victims were entitled to bring claims, courts have not distinguished between those whose loved ones were killed or physically injured immediately and those whose loved ones suffered from latent or long-term physical or emotional injuries. Although courts may take into account the nature of the injuries to the direct victim, and the amount of the award to the direct victim, in calculating the *amount* of the award to the family member victims, Plaintiffs are not aware of any court that has held that those factors may preclude family members from bringing claims at all, as Magistrate Judge Netburn recommended here.  *See, e.g.*, *Barry v. Islamic Republic of Iran*, 437 F. Supp. 3d 15, 58 (D.D.C. 2020) (scaling award to family member where the victim present at the scene suffered exclusively emotional injuries) (citing *Schertzman Cohen v. Islamic Republic of Iran*, Case No. 17-cv-1214, 2019 WL 3037868, at *8 (D.D.C. July 11, 2019)).

Thus, for example, courts in numerous cases have made awards to family member victims where the direct victim had no physical injuries but suffered emotionally and psychologically, including where the injuries did not manifest immediately or continued to worsen in the months and years after the relevant attack.  *See, e.g.*, *Barry*, 437 F. Supp. 3d at 58; *Davis*, 882 F. Supp. 2d at 12 (adopting Report of Special Master, Case No. 07-cv-01302, Mar. 7, 2012, ECF 110) (awarding damages to family members of M. Bartholomew, who volunteered to help rescue efforts following the bombing of the marine barracks and later suffered from PTSD);

*Mustard v. Islamic Republic of Iran*, Case No. 21-cv-00163, 2023 WL 1778193 at *14 (D.D.C. Feb. 6, 2023) (awarding damages to family member victims based on the "continued distress of witnessing their [loved one] deal with the psychological after-effects of the attack" on a housing complex in Saudi Arabia); *Amduso v. Republic of Sudan*, 61 F. Supp. 3d 42, 46 (D.D.C. 2014) (adopting Report of Special Master, Case No. 08-cv-1361, May 21, 2014, ECF No. 134 and Report of Special Master, July 2, 2014, ECF 209) (awarding damages to family member victims based on emotional trauma to the direct victim and/or direct victims' emotional distance from family member victims after the attacks on U.S. Embassies in Africa).

Finally, courts have repeatedly affirmed the "importance of ensuring 'that individuals with similar injuries receive similar awards,'" regardless of the attack at issue. *Taitt v. Islamic Republic of Iran*, Case No. 20-cv-1557, 2023 WL 2536518 at *9 (D.D.C. Mar. 16, 2023) (quoting *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25, 54 (D.D.C. 2007)); *see also Valore*, 700 F. Supp. 2d at 83. Although this language is often used in the context of determining the amount of damages to award, the principle is no less applicable in terms of making sure that the law does not treat similarly situated victims differently from others in terms of the ability to bring a claim. As the Family Member Plaintiffs here are situated and have suffered similarly to the family member plaintiffs who have already been awarded damages by this Court for the 9/11 Attacks and to the family member plaintiffs in numerous other terrorist attacks considered by courts in this and other Districts, this Court should not deny the claims of the Family Member Plaintiffs. To deny their claims would be to draw unfair distinctions between their suffering and the suffering of other family members injured as a result of the 9/11 Attacks and family members injured as a result of other terrorist attacks. There is no legal basis for such disparate treatment in this context. The Family Member Plaintiffs, no less than all

victims of the 9/11 Attacks with claims under the FSIA's Terrorism Exception, are entitled to justice for their suffering, and to deny their claims would be to unfairly and without legal basis deny them the justice they deserve.

### IV.   <u>Conclusion</u>

For all the reasons set forth above, Plaintiffs respectfully object to Magistrate Judge Netburn's R. & R. only insofar as it recommended denial of the claims of Family Member Plaintiffs, and Plaintiffs respectfully request that the Court enter judgment in favor of all Plaintiffs (pending substitution of proper representatives where necessary).

August 1, 2023

Respectfully submitted,

 /s/ Barry Salzman           
Barry Salzman
Michael Barasch
Barasch & McGarry, P.C.
11 Park Place
18th Floor
New York, NY 10007
Phone: 212.385.8000
Fax: 212.385.7845

Aryeh S. Portnoy
Glen G. McGorty
Crowell & Moring LLP
590 Madison Avenue
20th Floor
New York, NY 10022
Phone: 212.223.4000
Fax: 212.223.4134

COUNSEL FOR PLAINTIFFS